# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 4:19-cr-309 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| -vs- | ) | |
| | ) | |
| DEVONTAE WESSON, | ) | **DEFENDANT'S MOTION TO** |
| | ) | **SUPPRESS PHYSICAL EVIDENCE** |
| Defendant. | ) | |

Now comes Defendant, Devontae Wesson, by and through undersigned counsel, and hereby respectfully moves this Court for an order suppressing any and all physical evidence seized from the residence on Ferndale Avenue SW, Warren, Ohio, which the government may seek to introduce at trial, on the grounds that said evidence was gathered as a result of a succession of unconstitutional searches, in violation of the rights guaranteed to Defendant by the Fourth Amendment to the United States Constitution.

                                                Respectfully submitted,

                                                 */s/ - Michael J. Goldberg*
                                                **MICHAEL J. GOLDBERG (0040839)**
                                                **THE GOLDBERG LAW FIRM, LLC**
                                                323 Lakeside Avenue, Suite 450
                                                Cleveland, OH 44113
                                                Tel: 216-696-4514
                                                Fax: 216-781-6242
                                                goldberg@goldberg-lawfirm.com
                                                *Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing have been filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                               */s/ - Michael J. Goldberg*
                                               **MICHAEL J. GOLDBERG (0040839)**
                                               *Attorney for Defendant*

**MEMORANDUM IN SUPPORT**

## I. STATEMENT OF THE FACTS

The facts set forth herein have largely been derived from the indictment and police reports (primarily the *Affidavit for Search Warrant* submitted on November 29, 2018 by Detective Nicholas J. O'Hara of the Trumbull County Sheriff's Office, hereinafter cited as "Det. O'Hara Aff.") in this case.

This matter arose from a drug trafficking investigation of Defendant Wesson. On November 29, 2018, officers stopped a vehicle driven by Defendant as Defendant was allegedly departing the "target" residence on Ferndale Avenue. Det. O'Hara Aff. ¶ 22. A canine unit was called to the location of the traffic stop and, after the canine allegedly alerted to the presence of a narcotic odor, the vehicle was searched. *Id*. While the search turned up no drugs, officers located an "undetermined amount of U.S. currency" on Defendant's person and in a box found in the back passenger compartment. *Id*.

It is further stated in the *Affadavit for Search Warrant* (without any corresponding factual basis) that: "[d]uring the traffic stop, investigators believe there is a likelihood [Defendant] Wesson had the ability to contact individuals in his Drug Trafficking Organization (DTO) to alert them of his detainment by police in order for them to retrieve any incriminating evidence located at the Target Residence." *Id*. at ¶ 22. It bears reiterating that this statement is purely speculative and conclusory, as it was made utterly devoid (to counsel's current knowledge) of any supporting factual observations.

During the traffic stop, law enforcement maintained "visual observation of the Target Residence." *Id*. at ¶ 23. Officers allegedly observed a "gray Mercedes Benz, driven by a known narcotics trafficker [and occupied by another unidentified black male], arrive at the location." *Id*.

3

These two individuals were observed by law enforcement to have exited there vehicle. *Id*. While it is stated in the affadavit that these individuals were observed "walk[ing] towards the entrance of the Target Residence," it is acknowledged that officers "lost sight" of these individuals. *Id*. Nevertheless, despite having no specific or direct factual support, the affadavit continues by stating officers "suspected" the individuals to have entered the residence. *Id*. It was on this basis that law enforcement officers entered the residence *without* first obtaining a warrant. *Id*.

The affadavit states that officers entered the residence without a warrant "in an attempt to prevent the known narcotics trafficker from potentially destroying evidence." *Id*. Furthermore, upon entering, law enforcement "secured the Target Residence in order to prevent the destruction of evidence." *Id*. While doing so, law enforcement allegedly "observed a large quantity of suspected heroin, cocaine, and on digital scale with unknown powdery substance on the kitchen island." *Id*. Despite securing the residence, the "known narcotics trafficker fled out of the backdoor of the Target Residence." *Id*. The second, unidentified male was held for questioning. It was only then, with the advantage of having already effectively searched the inside of the residence, that law enforcement officers sought to (and ultimately did) obtain a search warrant.

## II. LAW AND ARGUMENT

A. <u>Under the Fourth Amendment to the United States Constitution, Warrantless Searches (Here, of a Residence) is Presumptively Unreasonable.</u>

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *United States v. Johnson*, 620 F.3d 685, 690 (6th Cir. 2010). It is well established that the Fourth Amendment protects an individual from

unreasonable governmental intrusion where there is an expectation of privacy. *Katz v. United States*, 389 U.S. 347, 351, (1967). It has become axiomatic in light of this expectation and right of privacy that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court*, 407 U.S. 297, 313, (1972). Warrantless searches and seizures inside a home are for this reason presumptively unreasonable. *Coolidge v. New Hampshire*, 403 U.S. 443, 474-475 (1971); *Payton v. New York*, 445 U.S. 573, 586 (1980).

Officers entered the residence on Ferndale Avenue on November 29, 2018 *without* first obtaining a warrant. Warrantless entries inside a residence, as set forth above, are presumptively unreasonable and, in the vast majority of instances, are appropriately deemed unconstitutional. As such is the case here, the burden falls upon the government, not Defendant, to justify the intrusion.

    B.  <u>The Government Bears the Burden of Overcoming the Presumption of Unreasonableness.</u>

The Fourth Amendment, as set forth above, prohibits the warrantless entry and search of a home absent exigent circumstances. *Payton* at 589-590. This exception to the warrant requirement has been carefully delineated, and applies only to cases in which the exigency of the surrounding circumstances command *immediate* action. *Minnesota v. Olson* (1990), 495 U.S. 91 (emphasis added). In order to overcome the presumption of unreasonableness, the burden is on the Government, *see, e.g., Payton*, at 573, to prove the existence of a legitimate exigency, *Welsh* at 749-750 (characterizing this as a "heavy burden"). The government cannot in this case overcome the difficult burden because, among other reasons, the claimed exigency was neither legitimate nor adequate to justify the intrusion. To the extent the justifications provided by law

5

enforcement could be deemed "legitimate," it is rendered inadequate by virtue of the lack of immediacy with which action was needed, and due to a lack of probable cause.

### *"Exigency" defined*

Exigent circumstances arise where "real, immediate, and serious consequences" will "certainly occur" if a police officer postpones action to obtain a warrant. *Welsh v. Wisconsin*, 466 U.S. 740 (1984). The "exigencies of the situation" must ". . . make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona* (1978), 473 U.S. 385, 390, quoting *McDonald v. United States* (1948), 335 U.S. 451. Examples of "exigencies" include "[1] hot pursuit of a fleeing felon, [2] imminent destruction of evidence, [3] the need to prevent a suspect's escape or the risk of danger to police or other persons inside or outside the dwelling." *Id.*, citing *Welsh v. Wisconsin*, 466 U.S. 740 (1984). None of these exceptions sufficiently justify the intrusion into the residence at issue in this matter. Based on the search warrant affidavit (¶¶ 22–23), the officers in this matter apparently relied upon the "imminent destruction of evidence" justification.

### *Imminent Destruction of Evidence*

Under this exigent circumstance exception, there must be an *objectively reasonable belief* that (i) someone is indeed inside the residence and that (ii) the destruction of evidence is imminent. *United States v. Straughter*, 950 F.2d 1223 (6th Cir. 1991); see also *United States v. Buchanan*, 904 F.2d 349 (6th Cir. 1990) (police who believe probable cause to search exists may not enter the premises of a residence and excuse the failure to get a warrant on the basis they would have gotten one anyway). In *Straughter*, supra, several members of a drug conspiracy had been arrested and others were known to be at large. However, the police had no *specific* information that anybody was in the particular residence they searched. Thus, the *Straughter*

Court held that entry into this house without a warrant was not justified by the exigent circumstances exception. See also *United States v. Ellis*, 499 F.3d 686 (7th Cir. 2007) (the mere sound of "movement in the house" is not enough to amount to probable cause that evidence was being destroyed or hidden).

It therefore follows that, prior to entering, law enforcement agents must have *affirmative* proof of the likelihood of destruction of evidence in order to justify a warrantless entry. *United States v. Radka*, 904 F.2d 357 (6th Cir. 1990). In *Radka*, supra, similar to this matter, police believed they had established a relationship between narcotics and a particular residence and, based upon having stopped a car approximately 8 miles away from the residence, that individuals in the residence were likely to destroy evidence. The *Radka* Court found it was unlikely that any occupants of the residence were aware of the arrest and thus likely to immediately destroy evidence.

Similarly here, the affadavit is without any direct factual observations which support the claim (made therein) that the two individuals at the residence were notified of Defendant's detention. Instead, the affadavit merely suggests a "likelihood" Defendant "had the ability" to contact these individuals. However, as the Sixth Circuit has previously cautioned, officers must have more than a mere hunch or suspicion before an exigency can excuse the necessity of obtaining a warrant. See, e.g., *United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996) (in the context of executing a search warrant: "[t]he mere possibility or suspicion that a party is likely to dispose of evidence . . . is not sufficient to create an exigency.").

Also similar to this case is *United States v. Anderson*, 981 F.2d 1560 (10th Cir. 1992). In *Anderson*, after conspirators were arrested, police could not state with any level of certainty that anybody remained inside of a house in which officers' believed there to be marijuana.

7

Nevertheless, the police—worried that coconspirators were indeed still in the house, and that they would be alerted about the arrests—entered the residence in order to preclude the destruction of evidence. This was found to be improper because, as the *Anderson* Court explained, police must do more than *merely suspect* that other conspirators remain in the house, and thus may destroy evidence, before officers can rely on the exigent circumstances exception. See also, *United States v. Finch*, 998 F.2d 349, 353 (6th Cir. 1993) (exigent circumstances exist when officers have a *justified belief* that those within are "engaged in escape or the destruction of evidence.").

    Likewise in this matter, there is no affirmative proof of the likelihood of destruction of evidence. Here, the affadavit for the search warrant does nothing more than state in conclusory terms without factual basis that officers "believed" there was a "likelihood" Defendant "had the ability" to contact other individuals to alert them of his detainment. However, as set forth in *Anderson* and *Radka*, supra, there must be far more than merely suspecting potential destruction of evidence in order to justify the warrantless entry of a residence. Accordingly, the officers have failed to satisfy the requirement of this exigent circumstances exception.

    C. <u>Under the Exclusionary Rule, All Evidence Seized from the Residence Must be Suppressed As Fruit of an Unconstitutional Search in Violation of Defendant's Rights.</u>

    The exclusionary rule was adopted to effectuate the Fourth Amendment right of all citizens to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. Under this rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding. This prohibition applies as well to the fruits of the illegally seized evidence. *Mapp v. Ohio*, 367 U.S. 643 (1961); *Wong Sun v. United States*, 371 U.S. 471 (1962).

In this matter, the fruits of the poisonous tree doctrine should be applied to exclude any and all evidence found in the residence. This is because the seizure was a result of successive unconstitutional searches. This includes the evidence obtained during the execution of the tainted search warrant. The evidence obtained while unlawfully present inside the residence was vital to the issuance of all subsequent search warrants. Thus, after striking the portions of the search warrant affidavit which relate to the evidence and observations made while unlawfully present inside the residence (¶ 23), the remaining paragraphs fail to establish probable cause. Thus, all evidence obtained during the execution of the tainted searched warrants must be suppressed as fruit of the poisonous tree.

### III. CONCLUSION

For the foregoing reasons, Defendant, Devontae Wesson, respectfully asks this Court to grant this motion and to issue an order suppressing any and all, tangible and intangible, evidence seized by law enforcement from the residence on Ferndale Avenue SW, Warren, Ohio, on the grounds the evidence was gathered as a result of a succession of unconstitutional searches, in violation of the rights guaranteed to Defendant by the Fourth Amendment to the United States Constitution.

Respectfully submitted,

 */s/ - Michael J. Goldberg*
**MICHAEL J. GOLDBERG (0040839)**
**THE GOLDBERG LAW FIRM, LLC**
323 Lakeside Avenue, Suite 450
Cleveland, OH 44113
Tel: 216-696-4514
Fax: 216-781-6242
goldberg@goldberg-lawfirm.com
*Attorney for Defendant*